IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **REDTOWN RANCH HOLDINGS, LLC and PINE BLISS, LLC,** | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | |
| **NECHES AND TRINITY VALLEYS GROUNDWATER CONSERVATION DISTRICT and TERRY MORROW, GARY DOUGLAS, RANDALL CHANDLER, JIMMY TERRELL, CODY RAYBURN, DANNY CROSSLEY, and JEFF HORTON**, each in their individual capacities and in their official capacities as **DIRECTORS OF THE NECHES AND TRINITY VALLEYS GROUNDWATER CONSERVATION DISTRICT,** | § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 6:26-CV-0328** |
| *Defendants*. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Redtown Ranch Holdings, LLC ("Redtown Ranch") and Pine Bliss, LLC ("Pine Bliss") (collectively, "Plaintiffs") file this Original Complaint against Defendants Neches and Trinity Valleys Groundwater Conservation District (the "District") and Members of its Board of Directors, Terry Morrow, Gary Douglas, Randall Chandler, Jimmy Terrell, Cody Rayburn, Danny Crossley, and Jeff Horton, each in their individual capacities and in their official capacities, who voted in favor of the challenged government action (the

1

"Directors"; collectively, with the District, "Defendants"), and in support thereof would respectfully show the Court as follows:

## NATURE OF SUIT

1.      This is a civil rights action and a takings case brought pursuant to 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 17 and 19 of the Texas Constitution, seeking just compensation, declaratory relief, injunctive relief, and damages arising from Defendants' deliberate, targeted, and escalating campaign to strip Plaintiffs of their constitutionally protected property rights in the groundwater beneath their own land. Through a coordinated series of actions, culminating in the adoption of a pretextual "moratorium" engineered to block Plaintiffs and Plaintiffs alone from exercising their groundwater rights, Defendants have effectively confiscated Plaintiffs' private property without just compensation and in flagrant violation of due process of law.

2.      The Directors' illegal and unconstitutional actions are in violation of the oath each Director took to preserve, protect, and defend the Constitution and laws of both the United States and the State of Texas. Those *ultra vires* actions in the name of the District have not been taken in good faith pursuit of legitimate regulatory objectives. They are the product of a deliberate scheme, orchestrated by the Directors themselves, to weaponize the District's regulatory machinery against Plaintiffs, to prevent Plaintiffs from ever accessing the water beneath their own land, and to ensure that Plaintiffs' constitutionally protected groundwater rights are rendered permanently worthless. The Directors' conduct has culminated in a violation of Plaintiffs' due process and civil rights, and an unlawful appropriation, amounting

2

to outright confiscation, of Plaintiffs' real property rights in the groundwater under their property and their associated investment-backed expectations in exercising those rights.

3.      On May 21, 2026, the District, through the Directors, adopted Resolution and Order No. 2026-001, titled "Declaring a Temporary Moratorium on Processing and Permitting New Non-Exempt Drilling, Operating, and Transfer/Transport Permit Applications" (the "Moratorium"). The Moratorium is the latest and most brazen weapon in Defendants' ongoing campaign to obstruct Plaintiffs' exercise of their groundwater rights. It categorically prohibits the District from accepting or processing any new non-exempt groundwater permit applications, effective immediately and continuing indefinitely until the Directors approve final amendments to the District's Rules with no fixed termination date. The Moratorium is not a neutral, generally applicable regulation. It was specifically designed and timed to prevent Plaintiffs—and effectively only Plaintiffs—from pursuing the groundwater rights they have spent more than two years and substantial resources attempting to exercise through lawful channels.

4.      Under Texas law, groundwater beneath the surface of land is the private property of the surface owner. *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814, 832 (Tex. 2012); Tex. Water Code § 36.002(a). Plaintiffs own approximately 11,500 acres of land in Anderson County and Henderson County, Texas, both within the territorial boundaries of the District. Defendants know that Plaintiffs own this groundwater. The Moratorium is the mechanism by which Defendants seek to seize it. By eliminating any pathway for Plaintiffs to obtain the permits necessary to explore and develop the groundwater beneath their own land, the Moratorium does not merely "regulate" Plaintiffs' property; it confiscates it, transferring

the practical value of Plaintiffs' groundwater estate from Plaintiffs to the District and, ultimately, to whomever the District later chooses to favor with access to that water.

5.      The Moratorium effects an unconstitutional taking of Plaintiffs' private property without just compensation, in violation of the Fifth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment, and Article I, Sections 17 and 19 of the Texas Constitution. Those same actions deprived Plaintiffs of procedural and substantive due process and civil rights, giving rise to damages under Sections 1983 and 1988 of Title 42 of the United States Code, which triggered Plaintiffs' claims and entitlement to recovery of attorneys' fees. The Directors also acted *ultra vires* in adopting the Moratorium—not because they mistakenly exceeded their authority, but because they knowingly and deliberately abused the regulatory power entrusted to them in order to target Plaintiffs' property for appropriation.

6.      Pursuant to *Knick v. Township of Scott*, 588 U.S. 180 (2019), Plaintiffs are entitled to bring this action directly in federal court without first seeking compensation through state procedures.

7.      Plaintiffs seek a declaratory judgment that the Moratorium effects an unconstitutional taking, temporary and permanent injunctive relief, just compensation for the taking of their property, and all other relief to which they may be justly entitled.

## PARTIES

8.      **Plaintiff Redtown Ranch Holdings, LLC** is a Delaware Limited Liability Company authorized to do business and operating under the laws of the State of Texas. Redtown Ranch is an approximately 7,200-acre ranch located primarily in Anderson County,

Texas. Anderson County is within the territorial limits of the Neches and Trinity Valleys Groundwater Conservation District. Redtown Ranch owns the groundwater estate beneath its property as a constitutionally protected real property right under Article XVI, Section 59 of the Texas Constitution.

9.    **Plaintiff Pine Bliss, LLC** is a Texas Limited Liability Company operating under the laws of the State of Texas. Pine Bliss is a roughly 4,300-acre ranch located in Henderson County, Texas. Henderson County is within the territorial limits of the Neches and Trinity Valleys Groundwater Conservation District. Pine Bliss owns the groundwater estate beneath its property as a constitutionally protected real property right under Article XVI, Section 59 of the Texas Constitution.

10.    **Defendant Neches and Trinity Valleys Groundwater Conservation District** (the "District") is a conservation and reclamation district created under Article XVI, Section 59 of the Texas Constitution, Chapter 36 of the Texas Water Code, and Chapter 8863 of the Special District Local Laws Code. The District is a political subdivision of the State of Texas and acts under color of state law in regulating groundwater production within its jurisdictional boundaries, which include Anderson County and Henderson County, Texas. The District may be served with process by serving its Board President, Terry Morrow, or its General Manager, Penny Hanson, at 501 Devereaux St., Jacksonville, Texas 75766.

11.    **Defendant Terry Morrow** is an individual who resides in Cherokee County, Texas, and serves as President and Director of the Board of Directors. Defendant Morrow may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he

may be found. Defendant Morrow is sued both in his individual capacity and in his official capacity.

12.    **Defendant Gary Douglas** is an individual who resides in Anderson County, Texas, and serves as Vice President and a Director of the Board of Directors of the District. Defendant Douglas may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Douglas is sued both in his individual capacity and in his official capacity.

13.    **Defendant Randall Chandler** is an individual who resides in Cherokee County, Texas, and serves as Secretary and a Director of the Board of Directors of the District. Defendant Chandler may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Chandler is sued both in his individual capacity and in his official capacity.

14.    **Defendant Jimmy Terrell** is an individual who resides in Anderson County, Texas, and serves as Treasurer and a Director of the Board of Directors of the District. Defendant Terrell may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Terrell is sued both in his individual capacity and in his official capacity.

15.    **Defendant Cody Rayburn** is an individual who resides in Henderson County, Texas, and serves as a Director of the Board of Directors of the District. Defendant Rayburn may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Rayburn is sued both in his individual capacity and in his official capacity.

16. **Defendant Danny Crossley** is an individual who resides in Henderson County, Texas, and serves as a Director of the Board of Directors of the District. Defendant Crossley may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Crossley is sued both in his individual capacity and in his official capacity.

17. **Defendant Jeff Horton** is an individual who resides in Cherokee County, Texas, and serves as a Director of the Board of Directors of the District. Defendant Horton may be served with process at 501 Devereaux St., Jacksonville, Texas 75766, or wherever he may be found. Defendant Horton is sued both in his individual capacity and in his official capacity.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court also has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act).

19. This Court has supplemental jurisdiction over any causes of action arising under Texas law under 28 U.S.C. § 1367.

20. Personal jurisdiction exists over all Defendants because they are domiciled within the State of Texas, the District is headquartered in the State of Texas, and the events giving rise to this action occurred in the State of Texas.

21.     Venue is proper in the Eastern District of Texas, Tyler Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Anderson County and Henderson County, Texas, both of which are located within this judicial district, and the District maintains its principal office in Cherokee County, Texas, also within this judicial district.

22.     This Court's jurisdiction is exercised properly over the Directors because Plaintiffs seek declaratory and injunctive relief against the Directors' continued violations of Plaintiffs' property rights and civil rights under color of state law.

23.     Plaintiffs are not required to exhaust state remedies before bringing these takings claims. *See Knick*, 588 U.S. at 186.

## STATEMENT OF FACTS

### A.  Plaintiffs' Property Interests in Groundwater

24.     Under Texas law, groundwater beneath the surface of land is owned in place by the owner of the surface estate as a constitutionally protected property right. *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814, 832 (Tex. 2012) ("[G]roundwater in place is owned by the landowner on the basis of oil and gas law."). This ownership interest is a vested real property right protected by the Takings Clause of the Fifth Amendment.

25.     Plaintiff Pine Bliss, LLC owns an approximately 4,355-acre improved farm and ranch estate in Henderson County, Texas, comprising extensive rural acreage, agricultural and ranch infrastructure, residential improvements, and associated water, mineral, and solar interests.

**8**

26.     Plaintiff Redtown Ranch Holdings, LLC owns an approximately 7,221-acre multi-tract ranch and timberland assemblage in Anderson and Houston Counties, Texas, comprising large contiguous and associated rural tracts with timber, water, reservoir, and other natural-resource interests.

27.     Both Anderson County and Henderson County are within the territorial boundaries of the Neches and Trinity Valleys Groundwater Conservation District.

### B.  Plaintiffs' Permit Applications and Regulatory History

28.     In May 2024, Plaintiffs each filed application packages for exploratory drilling permits with the District. Between the two Applications, Plaintiffs sought authority to drill a total of forty-three (43) wells across the two ranches (the "Applications").

29.     Plaintiffs invested substantial resources in preparing and filing the Applications, including filing fees, professional hydrogeological studies, engineering analyses, and legal costs, all in reliance on the existing regulatory framework established by Chapter 36 of the Texas Water Code and the District's then-existing Rules.

30.     On April 17, 2025, the District's Board of Directors voted that the Applications were "administratively complete" as required under the District's Rules and Chapter 36 of the Texas Water Code.

31.     On May 15, 2025, the Board issued Orders on Application to Drill Water Wells for both Plaintiffs, authorizing the Applications to proceed through the District's permitting process.

32.     On June 19, 2025, the Board approved transfer of the Applications to the State Office of Administrative Hearings ("SOAH") for a contested case hearing, further advancing Plaintiffs' Applications through the regulatory process.

33.     However, a Final Judgment entered on October 23, 2025 in a separate declaratory judgment action (the "Sanderson Farms" action) purported to rescind the Board's prior actions on Plaintiffs' Applications and enjoin further processing thereof. That action was not filed by disinterested parties. It was brought by a coalition of powerful local commercial interests, led by Sanderson Farms, LLC (d/b/a Wayne-Sanderson Farms), one of the largest poultry producers in Texas, along with its contract growers and Consolidated Water Supply Corporation, all of whom draw water from the same Carrizo-Wilcox Aquifer as Plaintiffs and who view Plaintiffs' Applications as a competitive threat to their own continued access to the resource. The Sanderson Farms plaintiffs did not seek to reform the permitting process or vindicate the public interest. They sought one thing: to block Plaintiffs—and only Plaintiffs—from ever accessing the groundwater beneath their own land.

34.     Rather than defend its own prior decisions on Plaintiffs' Applications, decisions the Board had made in compliance with the governing statutes and rules, the District capitulated. It settled the Sanderson Farms action by agreeing to rescind its own prior approvals of Plaintiffs' Applications and to halt all further action on those Applications indefinitely. The District did not settle to resolve a legitimate legal dispute. It settled to appease the coalition of local interests that had mobilized against Plaintiffs, and to give those interests what they wanted: permanent control over the aquifer at Plaintiffs' expense. Plaintiffs were not parties to the Sanderson Farms action, were excluded from the settlement negotiations,

and were afforded no opportunity to protect their rights. Plaintiffs have been actively litigating to have that judgment set aside through a Bill of Review, seeking to restore their Applications to their prior status in the District's permitting process.

35. Throughout this period, Plaintiffs have maintained their reasonable, investment-backed expectation that they would be able to pursue their constitutionally protected groundwater rights through the District's permitting process as established by Chapter 36 of the Texas Water Code. And throughout this period, the District and its Directors have engaged in a relentless campaign to prevent Plaintiffs from ever realizing those expectations—first by imposing extralegal requirements not found in the governing statutes or rules, then by colluding with third-party litigants to undo the Board's own prior decisions on Plaintiffs' Applications, and finally by adopting a moratorium that, whatever its stated justification, operates as a targeted prohibition on Plaintiffs' ability to access the water beneath their own land.

36. The pattern is unmistakable. At every turn, the District has subordinated its statutory obligations, and Plaintiffs' constitutional rights, to the demands of a politically connected coalition of local commercial interests that want Plaintiffs' water for themselves. The Sanderson Farms plaintiffs and their allies do not want a fair permitting process. They want no process at all—at least not for Plaintiffs. And the District has been only too willing to oblige. The District's so-called "temporary moratorium" is simply the latest mechanism by which the District ensures that the groundwater beneath Plaintiffs' property remains available for the existing users the District favors—Sanderson Farms, its contract growers,

Consolidated Water Supply Corporation, and other politically influential stakeholders, while Plaintiffs, the lawful owners of that groundwater, are permanently locked out.

## C.  The Moratorium

37.    On May 21, 2026, the District's Board of Directors adopted Resolution and Order No. 2026-001, titled "Declaring a Temporary Moratorium on Processing and Permitting New Non-Exempt Drilling, Operating, and Transfer/Transport Permit Applications" (the "Moratorium").

38.    The Moratorium took effect immediately upon adoption and purports to remain in effect "through October 1, 2026, or until final adoption of amendments to the Rules are approved by the Board, whichever occurs later." Of course, that might never happen.

39.    The Moratorium directs the District to "cease all activities related to accepting applications for any new non-exempt drilling, operating, and transfer/transport permits, or any amendments to such permits if those amendments would result in an increase in authorized groundwater production."

40.    The District's purported justification for the Moratorium, that it needs time for rule amendments and management plan updates following the 89th Texas Legislature's amendments to Chapter 36, Texas Water Code, is pretextual. A government body does not need to shut down its entire permitting apparatus to draft rule amendments. The Moratorium is not narrowly tailored to this or any legitimate purpose. Instead, it imposes a categorical ban on all new permitting activity, a ban that, given the unique procedural posture of Plaintiffs' Applications, falls with surgical precision on Plaintiffs. The Moratorium's real purpose is not regulatory housekeeping. It is to buy time for the District to engineer a new regulatory

framework—crafted at the behest of the same coalition of commercial interests that brought the Sanderson Farms action—that will permanently restrict or eliminate Plaintiffs' ability to exercise their groundwater rights, while preserving the aquifer for the exclusive benefit of existing users the District has chosen to protect.

41.    The Moratorium's limited exceptions apply only to: (a) pending administratively complete applications already received prior to adoption; (b) exempt well registrations; (c) non-exempt operating permit renewals; (d) non-exempt transport permit renewals; (e) amendments that do not increase authorized production; (f) permit ownership transfers; and (g) replacement wells that do not increase production capacity.

42.    None of the Moratorium's exceptions apply to Plaintiffs, and that is by design. Because the Sanderson Farms judgment purported to rescind the Board's prior actions on Plaintiffs' Applications, Plaintiffs' Applications are no longer treated as "pending administratively complete applications already received" within the meaning of the Moratorium's exceptions. The Moratorium's exceptions were crafted to protect every category of permit holder and applicant *except* Plaintiffs. The result is a regulatory scheme that, in practical operation, has one and only one target: Plaintiffs Redtown Ranch and Pine Bliss. The Moratorium thus categorically bars Plaintiffs, and effectively only Plaintiffs, from pursuing any pathway to develop the groundwater beneath their own land. This is not regulation. It is expropriation by administrative fiat.

**D. The Moratorium's Impact on Plaintiffs' Property Rights**

43.    The Moratorium eliminates any legal pathway for Plaintiffs to obtain permits necessary to explore, drill, produce, transport, or otherwise develop the groundwater beneath

their own land. Without such permits, Plaintiffs cannot make any economically beneficial use of their groundwater estate. The Moratorium does not merely delay Plaintiffs' rights—it destroys them. The water beneath Plaintiffs' land remains in the ground, controlled by a District that has made unmistakably clear it will use every tool at its disposal to ensure Plaintiffs never gain access to it.

44.    The Moratorium deprives Plaintiffs of all economically beneficial use of their groundwater rights, a distinct, constitutionally protected property interest under Texas law, by categorically eliminating any possibility of obtaining the permits required to exercise those rights.

45.    The economic impact of the Moratorium on Plaintiffs is severe. Plaintiffs have invested substantial resources over more than two years in pursuit of their Applications, including filing fees, hydrogeological studies, engineering analyses, legal costs, and other expenses directly related to the development of their groundwater estates. The Moratorium renders those investments worthless for an indefinite period.

46.    The Moratorium interferes with Plaintiffs' distinct, reasonable, investment-backed expectations. Plaintiffs filed their Applications in May 2024 in reliance upon the existing rules and the statutory framework of Chapter 36 of the Texas Water Code, which provides a defined process for obtaining groundwater permits. The Moratorium retroactively destroys those expectations by eliminating the very process upon which Plaintiffs relied.

47.    The character of the government action further supports a finding of a taking—and reveals the true nature of Defendants' scheme. The Moratorium is not a neutral, generally applicable regulation adopted in the public interest. It is a targeted weapon aimed squarely

**14**

at Plaintiffs. The Moratorium does not merely regulate the amount or manner of groundwater production; rather, it eliminates entirely the ability of landowners like Plaintiffs to even apply for permits to develop their own property. When viewed in the context of the District's two-year campaign of obstruction, delay, extralegal demands, and collusion with third-party litigants, all directed at Plaintiffs and their Applications, the Moratorium is revealed for what it is: the final act in a deliberate scheme to ensure that the groundwater beneath Plaintiffs' land remains under the District's exclusive control, available to be allocated to the politically connected coalition of poultry producers, water suppliers, and other local interests that the District has chosen to favor over Plaintiffs, the lawful owners of that water. The District's "own purposes" are not abstract. They are the protection and enrichment of the specific commercial interests that pressured the District into blocking Plaintiffs' Applications in the first place, at the cost of confiscating Plaintiffs' constitutionally protected private property without paying a dime.

48.    The Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." As the Supreme Court explained in *Armstrong v. United States*, 364 U.S. 40, 49 (1960), the Takings Clause was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." That is precisely what Defendants have done here. The Moratorium forces Plaintiffs—and Plaintiffs alone—to bear the entire cost of the District's purported desire to "update its Rules," while every other permit holder and applicant in the District is exempted. This is not shared sacrifice in the public

interest. It is the targeted confiscation of one landowner's property to serve the District's own ends.

### E. Due Process Violations

49.     The Moratorium was adopted without providing Plaintiffs with notice or an opportunity to be heard regarding its impact on their pending Applications and constitutionally protected property rights.

50.     The Moratorium provides no procedure whatsoever for affected landowners such as Plaintiffs to seek relief, an exception, or a variance from the categorical ban on permitting activity.

51.     The Moratorium is arbitrary and capricious because it purports to halt all new permitting based on prospective legislative amendments, even though Plaintiffs' Applications were filed under existing rules more than two years before the Moratorium was adopted. There is no rational connection between the need to amend rules and the decision to freeze all new permitting. The Moratorium's true purpose—blocking Plaintiffs' access to the groundwater beneath their own land—is confirmed by its timing, its structure, and the two-year history of targeted obstruction that preceded it.

52.     The Moratorium's indefinite duration, "until final adoption of amendments to the Rules are approved by the Board, whichever occurs later," renders it constitutionally infirm. There is no deadline by which the Board must complete its rulemaking, and the Moratorium could persist for months or years without limitation.

53.     The District's and Directors' authority to adopt rules and regulate groundwater, including decisions on administrative completeness, is limited by statute and by the Texas and

16

United States Constitutions, none of which grant them any authority to impose a moratorium on applications to exercise groundwater rights—let alone an indefinite one with vague or uncertain end conditions, adopted for the transparent purpose of preventing specific landowners from accessing water that is theirs by right. The Directors have perverted the regulatory authority entrusted to them, using it not to manage groundwater for the benefit of the public, but to control, restrict, and ultimately misappropriate the groundwater rights of Plaintiffs for the District's own purposes.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT
### (28 U.S.C. §§ 2201, 2202)

54.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

55.    An actual, justiciable controversy exists between the parties regarding whether the Moratorium effects an unconstitutional taking of Plaintiffs' private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

56.    An actual, justiciable controversy exists between the parties regarding whether the Moratorium violates Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment.

57.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that:

(a) The Moratorium effects an unconstitutional taking of Plaintiffs' private property without just compensation in violation of the Fifth Amendment, as incorporated by the Fourteenth Amendment;

(b) The Moratorium violates Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment;

(c) The Moratorium is void and unenforceable as applied to Plaintiffs and their property; and

(d) Plaintiffs are entitled to just compensation for the taking of their property for the period during which the Moratorium has been and continues to be in effect.

## COUNT II
## UNCONSTITUTIONAL REGULATORY TAKING — PER SE/LUCAS TAKING
### (Fifth and Fourteenth Amendments; 42 U.S.C. § 1983)

58. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

59. The Fifth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

60. Under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992), a government regulation that "denies all economically beneficial or productive use of land" constitutes a per se taking requiring compensation, regardless of the government's purpose.

61. Plaintiffs' groundwater estate is a distinct property interest recognized and protected under Texas law. *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814, 832 (Tex. 2012).

62. The Moratorium deprives Plaintiffs of all economically beneficial use of their groundwater estate. By categorically prohibiting the District from accepting or processing any new non-exempt permit applications, the Moratorium eliminates any legal pathway through which Plaintiffs may explore, drill, produce, transport, or otherwise develop the groundwater beneath their own land. Without permits, Plaintiffs cannot make any use of their groundwater

rights whatsoever. The water remains in the ground—controlled by a District that has made clear, through two years of targeted obstruction, that it intends to ensure Plaintiffs never gain access to it. The practical effect is indistinguishable from outright seizure: Plaintiffs hold title to a groundwater estate they can never use, while the District retains exclusive dominion over the resource.

63.     The Moratorium does not fall within the "background principles" exception to the *Lucas* per se rule. There is no background principle of Texas property law or nuisance law that would authorize the District to categorically prohibit all groundwater exploration and development across its entire jurisdictional territory for an indefinite period.

64.     Defendants have affected an unconstitutional per se taking of Plaintiffs' property in violation of the Fifth and Fourteenth Amendments and are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 for just compensation and damages.

## COUNT III
## UNCONSTITUTIONAL REGULATORY TAKING — PENN CENTRAL
### (Fifth and Fourteenth Amendments; 42 U.S.C. § 1983)

65.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

66.     In the alternative, even if the Moratorium does not constitute a per se taking under *Lucas*, it constitutes an unconstitutional regulatory taking under the multi-factor balancing test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

67.     **Economic Impact.** The economic impact of the Moratorium on Plaintiffs is severe. The Moratorium eliminates any pathway for Plaintiffs to develop their groundwater estate, rendering valueless a distinct and constitutionally protected property interest. Plaintiffs

**19**

have also invested substantial resources over more than two years in pursuit of their Applications, including filing fees, hydrogeological studies, engineering analyses, and legal costs. The Moratorium renders those investments worthless for an indefinite period and deprives Plaintiffs of the substantial economic value of their groundwater rights.

68.     **Interference with Reasonable Investment-Backed Expectations.** Plaintiffs filed their Applications in May 2024 in reliance upon the District's existing Rules and the statutory framework of Chapter 36 of the Texas Water Code. That framework provides a defined, predictable process for obtaining groundwater production permits. Plaintiffs invested substantial resources in reasonable reliance upon this established regulatory framework. The Moratorium retroactively destroys Plaintiffs' reasonable, investment-backed expectations by eliminating the very process upon which they relied.

69.     **Character of the Government Action.** The character of the Moratorium further supports a finding of a taking—and exposes the confiscatory nature of Defendants' conduct. The Moratorium is not a mere adjustment of benefits and burdens among similarly situated parties. Rather, it is a categorical ban that targets new permit applicants like Plaintiffs, forcing them alone to bear the burden of the District's administrative desire to revise its Rules—while exempting every other category of permitting activity from any disruption whatsoever. When viewed against the backdrop of the District's two-year pattern of obstruction, extralegal demands, collusion with third-party litigants, and systematic efforts to prevent Plaintiffs from exercising their lawful groundwater rights, the Moratorium is not regulatory action taken in the public interest. It is the instrument of a targeted appropriation—a deliberate seizure of Plaintiffs' property rights through the abuse of regulatory power,

designed to transfer the value of Plaintiffs' water to the District without compensation. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960).

70.     Defendants have affected an unconstitutional regulatory taking of Plaintiffs' property in violation of the Fifth and Fourteenth Amendments and are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 for just compensation and damages.

## COUNT IV
## TEMPORARY TAKING
### (Fifth and Fourteenth Amendments; 42 U.S.C. § 1983)

71.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72.     In *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 318-19 (1987), the Supreme Court held that "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective."

73.     Even if the Moratorium is eventually lifted or Plaintiffs ultimately obtain permits, the Moratorium has affected a taking of Plaintiffs' property for the entire period during which it has been in effect—from May 21, 2026, through the present and continuing.

74.     Defendants are liable to Plaintiffs for just compensation for this temporary taking under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

## COUNT V
## VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS
### (Fourteenth Amendment; 42 U.S.C. § 1983)

75.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

76.     The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law.

77.     Plaintiffs possess constitutionally protected property interests in the groundwater beneath their land and in their pending Applications, which had been declared administratively complete and advanced through the District's permitting process prior to the Sanderson Farms judgment.

78.     **Procedural Due Process.** The Moratorium was adopted without providing Plaintiffs with notice or a meaningful opportunity to be heard regarding its impact on their constitutionally protected property interests. The Moratorium provides no procedure whatsoever for affected landowners to seek relief, an exception, a variance, or any individualized determination. This wholesale deprivation of property rights without any procedural safeguards violates the Fourteenth Amendment.

79.     **Substantive Due Process.** The Moratorium is arbitrary and capricious in that it:

(a)     Purports to halt all new permitting based on prospective legislative amendments, even though Plaintiffs' Applications were filed under existing rules more than two years before the Moratorium's adoption;

(b)     Imposes an indefinite ban with no fixed termination date, as it continues "until final adoption of amendments to the Rules are approved by the Board" with no deadline for completion;

(c)  Bears no rational relationship to its stated purpose, as pausing all permitting activity is not necessary to draft or adopt rule amendments; and

(d)  Targets new permit applicants like Plaintiffs while exempting all other categories of permit activity, without any rational basis for the distinction—a structure that, when viewed in light of the District's multi-year campaign against Plaintiffs, reveals the Moratorium to be not a regulatory measure but a tool of deliberate discrimination.

80.  Defendants' actions in adopting and enforcing the Moratorium violate Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment and are actionable pursuant to 42 U.S.C. § 1983.

## COUNT VI
## TAKING AND DUE COURSE OF LAW VIOLATIONS
### (Article I, Sections 17 and 19, Texas Constitution)

81.  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

82.  Article I, Section 17 of the Texas Constitution provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made."

83.  Article I, Section 19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

84.  The Moratorium effects a taking of Plaintiffs' property in violation of Article I, Section 17 of the Texas Constitution by depriving Plaintiffs of all economically beneficial use of their groundwater estate without adequate compensation.

23

85.     The Moratorium deprives Plaintiffs of their property without due course of law in violation of Article I, Section 19 of the Texas Constitution.

86.     Plaintiffs are entitled to adequate compensation and other relief under the Texas Constitution for the taking of, damage to, and destruction of their property interests.

## CONDITIONS PRECEDENT

87.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

## APPLICATION FOR PRELIMINARY INJUNCTION

88.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

89.     Plaintiffs are entitled to a preliminary injunction restraining Defendants from enforcing the Moratorium against Plaintiffs and their property pending final resolution of this action because:

(a)     Plaintiffs are substantially likely to succeed on the merits of their takings and due process claims for the reasons set forth herein;

(b)     Plaintiffs will suffer irreparable harm absent injunctive relief because the continued deprivation of their constitutionally protected property rights cannot be adequately compensated by damages alone, and the indefinite duration of the Moratorium compounds the irreparable nature of the harm;

(c)     The balance of hardships favors Plaintiffs because Defendants have no legitimate interest in enforcing an unconstitutional regulation; and

(d)     The public interest is served by enjoining enforcement of unconstitutional government action.

## APPLICATION FOR PERMANENT INJUNCTION

90.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

91.     Plaintiffs are entitled to a permanent injunction barring Defendants from enforcing the Moratorium against Plaintiffs and their property. The Moratorium, as applied to Plaintiffs, violates the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 17 and 19 of the Texas Constitution.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Redtown Ranch Holdings, LLC and Pine Bliss, LLC respectfully pray that this Court grant the following relief:

92.     A declaratory judgment that the Moratorium effects an unconstitutional taking of Plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment;

93.     A declaratory judgment that the Moratorium violates Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution;

94.     A declaratory judgment that the Moratorium is void and unenforceable as applied to Plaintiffs and their property;

95.     A declaratory judgment that the Moratorium violates Article I, Sections 17 and 19 of the Texas Constitution;

96.    A preliminary injunction restraining Defendants from enforcing the Moratorium against Plaintiffs and their property pending final resolution of this action;

97.    A permanent injunction barring Defendants from enforcing the Moratorium against Plaintiffs and their property;

98.    Just compensation for the taking, damaging, destruction, or application to public use of Plaintiffs' property interests, in an amount to be determined at trial;

99.    Actual damages, consequential damages, and all other compensatory damages sustained by Plaintiffs as a result of Defendants' unconstitutional conduct;

100.    Nominal damages;

101.    Prejudgment and post-judgment interest at the maximum rate allowed by law;

102.    Reasonable and necessary attorneys' fees and expenses pursuant to 42 U.S.C. § 1988;

103.    Taxable and non-taxable costs of court; and

104.    Such other and further relief, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 7, 2026

Respectfully submitted,

*/s/ Jeffrey M. Tillotson*

Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
Mollie Mallory
State Bar No. 24125657
mmallory@tillotsonlaw.com
**TILLOTSON PATTON**
One Main Place
1201 Main Street, Suite 1300
Dallas, Texas 75202
(214) 382-3047 Telephone
(214) 292-6465 Facsimile

AND

Edmond R. McCarthy, Jr. (*Application for Admission pending)*
Edmond R.  McCarthy, III *(Application for Admission pending)*
**MCCARTHY & MCCARTHY, LLP**
1122 Colorado St., Suite 2399
Austin, Texas 78701
(512) 904-2313 Telephone
(512) 692-2826 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

27